FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 16, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARREN B., | NO: 2:23-CV-05111-LRS |
| Plaintiff, | |
| v. | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' briefs.[2]  ECF Nos. 14, 19.  This matter was submitted for consideration without oral argument.  Plaintiff is

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Rules of Civil Procedure, Frank Bisignano is substituted for Martin O'Malley as the Defendant in this suit.

[2] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No. 14. The supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went

ORDER - 1

represented by attorney Chad Hatfield. Defendant is represented by Special Assistant United States Attorney David Burdett. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's brief, ECF No. 14, is denied and Defendant's brief, ECF No. 19, is granted.

## JURISDICTION

Plaintiff Darren B. (Plaintiff),[3] filed for supplemental security income (SSI) on January 12, 2021, and alleged an onset date of January 1, 2020, which was later amended to July 11, 2019. Tr. 64, 289-95. Benefits were denied initially, Tr. 129-33, and upon reconsideration, Tr. 135-371. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on November 17, 2022.[4] Tr. 57-86. The ALJ issued an unfavorable decision on April 3, 2023, Tr. 16-38, and the Appeals Council denied review. Tr. 1-7. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

---

into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions. Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

[3] The Court identifies a plaintiff in a Social Security case only by the first name and last initial in order to protect privacy. See Local Civil Rule 5.2(c).

[4] Only the vocational expert testified at a prior hearing on July 28, 2022. Tr. 44-56.

ORDER - 2

1

2
## BACKGROUND

3       The facts of the case are set forth in the administrative hearing and transcripts,

4 the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

5 therefore only summarized here.

6       Plaintiff was 46 years old at the time the application was filed.  Tr. 30.  He

7 graduated from high school.  Tr. 995.  He has worked as a dishwasher and roofer,

8 but he has not been employed since 2009.  Tr. 995.  Plaintiff testified he has

9 difficulty staying focused, concentrating, and trusting people.  Tr. 80-83. He has

10 been homeless and has been in and out of jail.  Tr. 69-73, 76, 648-60. He completed

11 substance abuse treatment in April 2020 and testified that he has been sober since

12 then, except for marijuana.  Tr. 68-69, 76.

13
## STANDARD OF REVIEW

14      A district court's review of a final decision of the Commissioner of Social

15 Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

16 limited; the Commissioner's decision will be disturbed "only if it is not supported by

17 substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

18 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

19 mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

20 citation omitted).  Stated differently, substantial evidence equates to "more than a

21 mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such

severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated

impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 12, 2021, the application date.  Tr. 22.  At step two, the ALJ found that Plaintiff has the following severe impairments: anti-social personality disorder; attention deficit/hyperactivity disorder (ADHS); schizoaffetive disorder, bipolar type; and polysubstance use disorder.  Tr. 22.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 23.

The ALJ then found that Plaintiff has the residual functional capacity to perform full range of work at all exertional levels with the following nonexertional limitations:

> [T]he claimant can perform simple and repetitive tasks; he can have no interaction with or around the general public; he can have occasional/superficial interaction with co-workers, work with 10 or less coworkers and perform no tandem tasks; and he can have

ORDER - 7

occasional changes in the work setting and no fast paced assembly work.

Tr. 24.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 30. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as floor waxer, wall cleaner, and hand packager. Tr. 31.

Thus, the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act at any time since January 12, 2021, the date the application was filed. Tr. 32.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's symptom testimony;

2.    Whether the ALJ properly considered the medical opinions;

3.    Whether the ALJ properly considered the Listings;

4.    Whether the ALJ properly evaluated the lay witness statements; and

5.    Whether the ALJ made a legally sufficient step five finding.

ECF No. 14 at 4-5.

ORDER - 8

1

2

3                                **DISCUSSION**

4    **A.    Symptom Testimony**

5          An ALJ engages in a two-step analysis to determine whether a claimant's

6    testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

7    determine whether there is objective medical evidence of an underlying impairment

8    which could reasonably be expected to produce the pain or other symptoms alleged."

9    *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  Second, "[i]f the

10   claimant meets the first test and there is no evidence of malingering, the ALJ can

11   only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

12   gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*,

13   763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

14   "General findings are insufficient; rather, the ALJ must identify what testimony is

15   not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting

16   *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*,

17   278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

18   determination with findings sufficiently specific to permit the court to conclude that

19   the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and

20   convincing [evidence] standard is the most demanding required in Social Security

21

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ's decision must contain specific reasons for the weight given to the claimant's symptoms and be consistent with and supported by the evidence, which must be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.  Social Security Ruling 16-3p, 2016 WL 1119029, at *9.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  While the ALJ is not required to perform a line-by-line analysis of the claimant's testimony, the ALJ is still required to do more than offer "non-specific conclusions that [claimant's] testimony was inconsistent with her medical treatment." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of symptoms alleged, but that Plaintiff's

statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other information in the record.  Tr. 25.  The ALJ found, "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because of his intermittent treatment, noted improvement with treatment, inconsistent examination findings, and the opinion of the medical expert."  Tr. 25.

First, the ALJ found that Plaintiff's statements are inconsistent with his intermittent treatment and improvement with treatment. Tr. 25. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ considered the treatment record, noting that Plaintiff was not engaged in treatment or taking any medication at the time of Dr. Morgan's 2021 opinion, and that in February 2022 it was noted that "[h]e has not been on medications in a long period of time." Tr. 26, 588-89, 620. In June 2022, it was noted that Plaintiff "has essentially been untreated" and has inconsistent compliance. Tr. 26, 624-25. "It is likely that he has

had a substance-induced psychoses related to his use of and dependence on methamphetamine." Tr. 625.

In July and August 2022, Plaintiff was incarcerated and frequently accepted his antipsychotic medication (twice a day every day from 7/22/22-8/16/22 with 3 exceptions). Tr. 27, 912-15. In September 2022, it was noted that when Plaintiff was released from jail he was "lucid," and his friend stated that he was "as clear as I have seen him [in] a long time. I am sure it was because he had his medications consistently while he was in jail." Tr. 1003. Plaintiff requested and received long-acting medication which he reported to be effective, without adverse effects, and helpful so he did not have to remember to take daily medication. Tr. 1002, 1003, 1007, 1019. In January 2023, the ALJ noted the last mental health treatment record indicates Plaintiff was found to be "doing well" and stated, "I am so grateful for all that I have. . . . This medication is for me. It is helping." Tr. 27, 1014.

These records support the ALJ's conclusion that Plaintiff had intermittent mental health treatment with wide gaps of no treatment within the relevant period. Tr. 25. Ongoing treatment began near the end of the relevant period, and during that period Plaintiff reported that medication was effective in helping alleviate his symptoms. Tr. 25. The ALJ observed that during Plaintiff's most recent incarceration, when he began to accept medication on a more regular basis, he was noted to improve socially. Tr. 25.

Plaintiff does not address the ALJ's specific findings but restates his allegations and testimony and argues that his "history of intermittent treatment and difficulty consistently complying with treatment resulted from the mental illness itself."[5]  ECF No. 14 at 19-20.  Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, however, the ALJ's finding that Plaintiff's mental health condition was untreated over a significant portion of the period at issue contrasts with Plaintiff's improvement with treatment toward the end of record.

Second, the ALJ found that Plaintiff's statements are inconsistent with exam findings.  Tr. 25. While subjective testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ observed that there were signs of cognitive and social deficits on examination, but there were also signs of intact mental functioning.  Tr. 25; *see e.g.*, Tr. 591-92 (7/22/21, MSE[6] normal or within normal limits in all categories), 599 (10/29/21,

---

[5] Plaintiff cites SSR 82-59, which was rescinded and replaced by SSR 18-3p.

[6] Mental Status Exam (MSE).

disheveled, nonsensical, depressed, disorganized, pleasant, cooperative, restless),

619 (2/24/22, MSE abnormal in all categories), 630 (6/24/22, MSE mostly normal

with paranoid thought content, needing redirection, insight and judgment appear

impaired), 716-718 (2/14/22, disheveled, appropriate, alert, responsive, angry,

agitated), 855-56 (2/15/21, MSE appropriate, alert, cooperative), 988-90 (7/21/22,

MSE normal/appropriate in all areas except mildly unkempt appearance, loud

speech, fair judgment), 1004-05 (MSE abnormal in most categories), 1010-11

(9/14/22, MSE abnormal in most categories), 1015-16 (1/18/23, MSE abnormal in

most categories).  As the ALJ observed, the mental status exam findings are mixed.

The ALJ reasoned that if Plaintiff was limited to a greater degree, the findings

would be more consistent.  Tr. 25

Additionally, the ALJ found evidence of polysubstance use disorder in the

record. Tr. 27, 599, 617. The ALJ noted Plaintiff's testimony that he had not had

drugs or alcohol since April 26, 2020, Tr. 25, 69, but the record reflects positive

drug tests for amphetamine and methamphetamine in 2021 and 2022. Tr. 27 (citing

Tr. 902, 904, 905, 982). While the ALJ did not find Plaintiff's drug use material to

the final nondisability determination, conflicting or inconsistent statements

concerning drug use can contribute to an adverse credibility finding. *Thomas*, 278

F.3d at 959.

Third, the ALJ found Plaintiff's statements are inconsistent with the opinion

of Dr. Lace, the medical expert.  Tr. 25.  A medical opinion indicating the claimant

can perform a limited range of work may undermine a claim of disabling limitations. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995). The ALJ noted the medical expert reviewed the entire medical record and noted only mild to moderate limitations with or without substance abuse. Tr. 25-26. As discussed in more detail below, the ALJ reasonably found Dr. Lace's opinion to be persuasive.

Based on the foregoing, the ALJ's finding regarding Plaintiff's symptom testimony is supported by substantial evidence.

## C. Medical Opinions

For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 416.920c. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). The ALJ may, but is not required, to

explain how other factors were considered.  20 C.F.R. § 416.920c(b)(2); *see* 20

C.F.R. § 416.920c(c)(1)-(5).

In evaluating supportability, the more relevant the objective medical evidence

and supporting explanations provided by a medical source to support his or her

opinion, the more persuasive the medical opinion will be.  20 C.F.R. §

416.920c(c)(1)-(2).  In evaluating consistency, the more consistent a medical

opinion is with the evidence from other medical sources and nonmedical sources in

the claim, the more persuasive the medical opinion will be.  20 C.F.R. §

416.920c(c)(1)-(2).

   1.  *David Morgan, Ph.D., and Holly Petaja, Ph.D.*

In July 2021, Dr. Morgan completed a DSHS Psychological/Psychiatric

Evaluation form.[7] Tr. 588-92. Plaintiff told Dr. Morgan he "can't seem to stay

focused on things," and Dr. Morgan observed that throughout the interview, Plaintiff

went on tangents and did not stop talking much. Tr. 588. Plaintiff minimized the

effect of his symptoms, but Dr. Morgan thought it was clear that Plaintiff has

difficulty paying close attention, does not follow through, and is very disorganized.

Tr. 588.  He was not engaged in mental health treatment and was not taking

---

[7] Dr. Morgan also completed an evaluation form in July 2019.  Tr. 994-98.  The

ALJ found the opinion is not persuasive, Tr. 29, and Plaintiff does not challenge

this finding.

ORDER - 16

prescription psychiatric medication at the time of the interview. Tr. 588. Plaintiff reported he had been in recovery from methamphetamine for about a year. Tr. 589. Dr. Morgan diagnosed ADHD, predominately inattentive presentation, and antisocial personality disorder. Tr. 589. He assessed marked limitations in seven functional areas, with an overall severity rating of marked. Tr. 590. In July 2021, Dr. Petaja reviewed Dr. Morgan's report and opined the diagnoses and functional limitations assessed by Dr. Morgan are supported by substantial evidence. Tr. 594-95.

The ALJ found Dr. Morgan's and Dr. Petaja's opinions are partially persuasive.  Tr. 29.  Regarding supportability, the ALJ found that the marked limitations assessed are not supported by Dr. Morgan's own exam findings. Tr. 29. The mental status exam findings reflect normal speech, cooperative attitude and behavior, normal mood and affect, and all other categories were within normal limits with no abnormalities noted.  Tr. 591-92.  Plaintiff argues that the clinical interview portion of the opinion establishes an inability to focus and many incarcerations, and that Dr. Morgan's description of symptoms which occur daily at a moderate to marked severity should have been considered by the ALJ.  ECF No. 14 at 9-10. However, the ALJ observed that Dr. Morgan's opinion is "very internally inconsistent" with his own findings of intact mental functioning on exam. Tr. 30.  It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th

Cir. 1999).  The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Regarding consistency, the ALJ found the rest of Dr. Morgan's opinion is persuasive because is consistent with Plaintiff's improvement with treatment. Tr. 29. Plaintiff was more interactive with reduced frequency of angry outbursts after receiving long-acting medication injections in 2022.  Tr. 29, 1002-05, 1007, 1014-17, 1019.  Additionally, the ALJ noted that Dr. Morgan reported that at the time of the evaluation, Plaintiff had not been engaged in any treatment.  Tr. 26, 588. Plaintiff contends this finding is based on waxing and waning symptoms rather than improvement with treatment and argues he has not demonstrated sustained improvement over time.  ECF No. 14 at 11-12. As discussed above, the ALJ's finding regarding improvement with treatment is supported by substantial evidence.

*2.  Michael Lace, Psy.D.*

Dr. Lace, the medical expert, reviewed the record and completed a Medical Statement of Ability to Do Work-Related Activities (Mental) and set of interrogatories in February 2023.  Tr. 1034-41.  He opined that, without drug and alcohol abuse, Plaintiff has mild limitations in the ability to understand, remember, and carry out instructions, the ability to interact appropriately with supervisors, co-workers, and the public, and respond to changes in a routine work environment. Tr. 1034-35.  With drug and alcohol abuse considered, Dr. Lace assessed moderate

ORDER - 18

limitations in the ability to interact appropriately with the public, supervisors, and co-workers, and in the ability to respond appropriately to usual work situations and changes in a routine work setting. Tr. 1034-35.  He also opined that with or without drug and alcohol abuse, Plaintiff has moderate limitations in concentration, persistence, and pace, and that with drug and alcohol abuse, he also has a moderate limitation in the ability to adapt and manage himself.  Tr. 1035.  In summary, Dr. Lace assessed no more than moderate limitations with or without drug and alcohol abuse.

The ALJ found Dr. Lace's opinion generally persuasive.  Regarding supportability, the ALJ found the opinion is supported by Dr. Lace's ability to review the entire record and his familiarity with the Social Security Act, Listings, and regulations. The ALJ also found the opinion is supported by a detailed explanation. Tr. 28, 1037.  Regarding consistency, the ALJ found the opinion is consistent with Plaintiff's improvement with treatment, evidenced by Plaintiff's reports that long-acting medication injections were helping and notes indicating he was more interactive with reduced frequency of outbursts.  Tr. 28.

Plaintiff contends the ALJ is incorrect because, according to Plaintiff, Dr. Lace's opinion contains inaccuracies and inconsistencies.  ECF No. 14 at 13.  It is the ALJ's role to evaluate the evidence and resolve conflicts or ambiguities. *Magallanes*, 881 F.2d at 751; *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971).  Plaintiff submitted an objection to Dr. Lace's opinion which was considered

by the ALJ.  Tr. 29-30, 451-53.  Having reviewed the record, Plaintiff's objections

which are quoted in Plaintiff's opening brief, and the ALJ's decision, the Court

cannot conclude that as a matter of law Dr. Lace's opinion is entitled to no weight.

Plaintiff's arguments are essentially restatements of other arguments which were

otherwise addressed.

## C.    Step Three

At step three of the evaluation process, the ALJ must determine whether a

claimant has an impairment or combination of impairments that meets or equals an

impairment contained in the listings.  *See* 20 C.F.R. § 416.920(d).  The listings

describe "each of the major body systems impairments [considered] to be severe

enough to prevent an individual from doing any gainful activity, regardless of his or

her age, education, or work experience."  20 C.F.R. § 416.925.  An impairment

"meets" a listing if it meets all of the specified medical criteria.  *Sullivan v. Zebley,*

493 U.S. 521, 530 (1990); *Tackett,* 180 F.3d at 1098.  An impairment that manifests

only some of the criteria, no matter how severely, does not qualify.  *Sullivan,* 493

U.S. at 530; *Tackett,* 180 F.3d at 1099.

An unlisted impairment or combination of impairments "equals" a listed

impairment if medical findings equal in severity to all of the criteria for the one most

similar listed impairment are present.  *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. §

416.926(b).  "Medical equivalence must be based on medical findings," and "[a]

generalized assertion of functional problems is not enough to establish disability at

step three." *Tackett*, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings are present equal in severity to all of the criteria for the one most similar listed impairment. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. § 416.926(b). The claimant bears the burden of establishing an impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ found that Plaintiff's conditions do not meet or equal Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), 12.08 (personality and impulse-control disorders), and 12.11 (neurodevelopmental disorders). To satisfy Listings 12.03 and 12.04, a claimant must meet the criteria of paragraphs A and B or paragraphs A and C.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03,12.04. For Listings 12.08 and 12.11, a claimant must meet the criteria of paragraphs A and B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.08, 12.11.

Plaintiff argues generally that he is disabled pursuant to Listings 12.03, 12.04, 12.08, and 12.11. ECF No. 14 at 16. Plaintiff does not challenge the ALJ's "B criteria" findings but argues only that the ALJ's finding regarding the "C criteria" is "incorrect and inadequate." ECF No. 14 at 15-16. Because Listings

---

[8] Paragraph A is not at issue in this case.

ORDER - 21

12.08 and 12.11 do not involve the C criteria, the ALJ's findings regarding those listings are not challenged and the Court concludes they are supported by substantial evidence.

Regarding Listing 12.03 and 12.04, Paragraph C provides the criteria used to evaluate "serious and persistent mental disorders." To satisfy the C criteria, "there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A2c, 12.00G2a. The criteria in C1 and C2 includes:

> 1.     Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); *and*
>
> 2.     Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his or her claim. 20 C.F.R. § 404.1526. Plaintiff bears the burden of establishing he meets a listing. *Burch*, 400 F.3d at 683.

The ALJ found the evidence does not establish the presence of the C criteria, noting that Plaintiff received conservative and intermittent treatment for his mental conditions consisting of medication management and outpatient therapy with periods

ORDER - 22

of noted improvement.  Tr. 24.  Plaintiff argues that (1) medication and mental

health counseling do not qualify as conservative treatment; (2) any improvement

took place in the controlled setting of incarceration or with the assistance of his

friend; and (3) he "requires a handler at all times" or he will exhibit antisocial and

illegal behavior when faced with everyday demands. ECF No. 14 at 16. While

mental health treatment may not always be properly characterized as "conservative

treatment," the ALJ showed that Plaintiff improved with treatment. Plaintiff's

improvement with treatment continued when he maintained care outside of jail. Tr.

1002, 1003, 1007, 1019. The last mental health treatment record indicates Plaintiff

was "doing well" and was "grateful" for the help his medication provided. Tr. 27,

1014. Lastly, the assertion that Plaintiff requires a "handler" is not based on any

medical record or finding, but on a lay witness statement that was rejected by the

ALJ.  Tr. 29.  The ALJ's step three finding is supported by substantial evidence.

## D.    Lay Witness Statement

For claims filed on or after March 27, 2017, 20 C.F.R. § 416.9520c describes

how an ALJ must evaluate evidence from medical sources and clarifies how an ALJ

should evaluate nonmedical lay testimony.  *See* 20 C.F.R. § 416.920c(d).  The

regulations indicate ALJs should consider "all of the available evidence" in

evaluating the intensity and persistence of symptoms, including evidence from

"medical sources and nonmedical sources" about the effect of a claimant's

symptoms.  20 C.F.R. § 416.929(c)(1); *see also* Social Security Ruling 16-3p, 2016

1    WL 1119029 (effective March 16, 2016) (requiring ALJs to consider other evidence

2    such as other nonmedical sources to evaluate symptoms). However, an ALJ is not

3    required to articulate how evidence from nonmedical sources was considered using

4    the requirements applicable to evaluations of medical opinions. *See* 20 C.F.R.

5    § 416.920c(d). Rather, "[i]f the ALJ wishes to discount the testimony of lay

6    witnesses, he must give reasons that are germane to each witness." *Dodrill v.*

7    *Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

8          Plaintiff contends the ALJ improperly evaluated the lay witness statement of

9    his friend, Melinda Talbott. ECF No. 14 at 16-18. In November 2022, Ms. Talbott

10   wrote a letter stating she met Plaintiff through a jail and street ministry at which

11   she volunteered. Tr. 444-45. She described outbursts by Plaintiff and difficulties

12   encountered when trying to assist him. She explained that he has a hard time

13   waiting, listening to others, focusing, and attending appointments. Ms. Talbott

14   helped Plaintiff get medication, but his pills were often stolen, so she helped him

15   get monthly injections. Tr. 444. She stated that to her knowledge, "he has not used

16   substances since he did treatment at ABHS [in 2019 until early 2020]." Tr. 444.

17         The ALJ considered Ms. Talbott's statement and credited her statement that

18   when Plaintiff was able to take his psychotropic medication or receive monthly

19   injections, his behavior such as yelling at cars lessened. Tr. 29, 444. The ALJ

20   determined that her opinion that Plaintiff needs a "handler" is a lay opinion and is

21   not supported by the medical record that he improved with treatment. Tr. 29.

1  Additionally, the ALJ noted that Ms. Talbott's statement that Plaintiff had not used

2  illicit substances since early 2020 is contradicted by positive drug tests in 2021 and

3  2022.  Tr. 29, 271, 273, 274, 982. Plaintiff restates previous arguments regarding

4  the need for a "handler" and the treatment record overall, which as discussed

5  throughout this decision, are not persuasive.  The ALJ's consideration of the lay

6  witness statement is legally sufficient.

7  **E.    Step Five**

8      Plaintiff argues the ALJ erred at step five because the vocational expert's

9  opinion that plaintiff can return to past relevant work was based on an incomplete

10  hypothetical.  ECF No. 14 at 20-21.  The ALJ's hypothetical must be based on

11  medical assumptions supported by substantial evidence in the record which reflect

12  all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir.

13  2001).  The hypothetical should be "accurate, detailed, and supported by the medical

14  record."  *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as true the

15  restrictions presented in a hypothetical question propounded by a claimant's counsel.

16  *Osenbrook*, 240 F.3d at 1164; *Magallanes*, 881 F.2d at 756-57; *Martinez v. Heckler*,

17  807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these

18  restrictions as long as they are supported by substantial evidence, even when there is

19  conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*

20      Plaintiff's argument assumes that the ALJ erred in evaluating his symptom

21  statements and the medical opinions.  ECF No. 14 at 21.  However, as discussed

throughout this decision, the ALJ's findings were legally sufficient.  Plaintiff has not demonstrated that any additional limitations were established in the record or that any limitations were improperly rejected by the ALJ.  The RFC finding is legally sufficient and supported by substantial evidence, discussed *supra*.  The ALJ therefore properly excluded other limitations from the RFC and hypothetical to the vocational expert.  The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper.  *See id.*; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

1. Plaintiff's Brief, **ECF No. 14**, is **DENIED**.

2. Defendant's Brief, **ECF No. 19**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 16, 2025.

LONNY R. SUKO
Senior United States District Judge

ORDER - 26